UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Daniel Graff,<br><br>        Plaintiff,<br><br>v.<br><br>Brighthouse Life Insurance Company, *also known as* Brighthouse Financial Life Insurance Company,<br><br>        Defendant. | No. 23-cv-1112 (KMM/JFD)<br><br><br>**ORDER** |

Plaintiff Daniel Graff filed this case against Defendant Brighthouse Life Insurance Company ("Brighthouse") in state court in Chisago County, alleging that the flexible premium adjustable life insurance policy Brighthouse issued him fails to use language that is easily readable and understandable to a person of average intelligence in violation of Minn. Stat. § 72C.06 and the implied covenant of good faith and fair dealing in every contract. He also asserts an unjust-enrichment claim based on the allegation that the premium payments he would potentially be required to make under the policy through its maturity date would be unjust. Plaintiff seeks several forms of declaratory relief. Brighthouse removed the case to federal court on diversity grounds and now seeks dismissal of the Complaint for failure to state a claim. [Doc. No. 10.] The Court held a hearing on Brighthouse's motion on July 25, 2023. [Doc. No. 25.] For the reasons that follow, the motion to dismiss is granted.

I.  Background

A. Mr. Graff's Allegations

In November 2004, an agent for The Travelers Life and Annuity Company ("Travelers") solicited Daniel Graff ("Mr. Graff") to apply for a Flexible Premium Adjustable Life Insurance Policy ("the Policy"). The insured under the Policy was Mr. Graff's father Robert Graff ("Robert"). [Compl. ¶¶ 1, 4, 12, Doc. No. 1-1.] Mr. Graff's application was approved, the Policy was issued on November 28, 2004, the Policy was delivered to him in Forest Lake, Minnesota, and he is the owner of the Policy. [*Id.* ¶¶ 5–6, 12.] Robert was 78 years old at the time the Policy was issued. [*Id.* ¶ 13.] Travelers eventually became Brighthouse. [*Id.* ¶ 8.]

The Policy includes a "maturity date" of November 28, 2026, which is when Robert turns 100 years old. [*Id.* ¶¶ 14–15.] The Policy includes a "death benefit" amount of $800,000, but since the Policy was issued, Mr. Graff has already paid premiums totaling over $874,000. [*Id.* ¶¶ 17, 19.] In 2022, Brighthouse provided Mr. Graff a Ledger that sets forth the likely premium payments he will be required to make through the maturity date to keep the policy current. [*Id.* ¶¶ 20–22; Doc. No. 1-1 at 38–39.] Based on the information in the Ledger, if Robert lives to his 100th birthday, Mr. Graff will have paid additional premiums totaling $755,500. [Compl. ¶ 23; Doc. No. 1-1 at 38–39.] That would make the total of his premium payments at the maturity date approximately $1.6 million for a policy that has, at most, a payout of $800,000. [Compl. ¶ 25.]

The Policy is an insurance product that is commonly referred to as "universal life insurance," ("ULI") which is a form of whole life insurance that "provides the

2

policyholder with the choice of maintain the policy until the earlier of the maturity date (usually when the insured reaches the age of 100) or the insured's death." *PHT Holding II LLC v. N. Am. Co. for Life and Health Ins.*, Case No. 4:18-cv-00368-SMR-HCA, 2023 WL 3714746, at *1 (S.D. Iowa May 27, 2023). Unlike traditional whole life insurance policies, which require fixed monthly premium payments, ULI policyholders pay flexible premiums. *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 461 (S.D.N.Y. 2014). ULI policyholders can make minimum monthly premium payments if they wish, but ULI policies also offer a savings component from which monthly deductions can be drawn by the insurer to cover the cost of the premiums, while the balance of funds in the account earns interest as long it sits there. *Id.*

Mr. Graff's Policy operates along these lines. Premiums paid under the Policy are credited to the Policy's "Accumulation Value" from which Brighthouse takes a monthly "Deduction Amount" to cover the cost of insurance, and any remaining amount in the account earns interest at a minimum of three percent. [Doc. 1-1 at 16, 23, 25.] The Policy's "Cash Value" is the Accumulation Value after deducting whatever Mr. Graff owes to Brighthouse and a "surrender charge."

Documents attached to the Complaint show that for policy years one through ten, Mr. Graff opted to make somewhat lower, consistent premium payments by selecting a "Death Benefit Guarantee Rider." [Doc. No. 1-1 at 19.] The gross annual planned premium for years one through ten at the time the Policy was issued was $34,005.48, but paying the premiums at this amount meant the expectation was that Mr. Graff's Accumulation Value would not grow at all. [Doc. No. 1-1 at 22.]

3

**B. Mr. Graff's Claims**

The Complaint includes three separate Counts. In Count One, Mr. Graff asserts that under Minn. Stat. § 72C.06, Brighthouse was required to use language in the Policy that is easily readable and understandable to a person of average intelligence and education. [Compl. ¶¶ 26–32.] However, he claims Brighthouse used language describing how premium payments are determined during the term of the Policy and the cash value of the Policy on its maturity date that was unclear and confusing. [*Id.* ¶¶ 30–31.] Count Two similarly claims that the Defendant's alleged failure to use readable and understandable language in the Policy constitutes a breach of the implied covenant of good faith and fair dealing.[1] [*Id.* ¶¶ 33–36.] Finally, in Count Three, Mr. Graff asserts a claim for unjust enrichment. [*Id.* ¶¶ 37–40.] He alleges that the amount of the premium payments he will be required to make from the time he filed the Complaint until the Policy is paid up on its maturity date is unjust and a "reasonable man would not invest $1,600,000 in order to realize a maximum return of $800,000." [*Id.* ¶ 38.] Consequently, Mr. Graff claims that by requiring him to pay the total of the anticipated premiums

---

[1] Under Minnesota law, a cause of action for breach of the covenant of good faith does not exist independent of a breach-of-contract claim. *Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir. 1994). This means that a "bad-faith motive in breaching a contract does not convert a contract action into a tort action." *Space Ctr., Inc. v. 451 Corp.*, 298 N.W.2d 443, 452 (Minn. 1980). It does not mean, however, that a plaintiff has to show "'an express breach of contract claim'" to pursue a claim for breach of the implied covenant of good faith and fair dealing because the claim "'assumes the parties did not expressly articulate the covenant allegedly breached.'" *Grady v. Progressive Direct Ins. Co.*, 634 F. Supp. 3d 929, 939 (D. Minn. Nov. 30, 2022) (quoting *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 670 (8th Cir. 2012)).

4

through the maturity date, "Defendant will be unjustly enriched to the detriment of Plaintiff." [*Id.* ¶ 40.]

Mr. Graff seeks several forms of declaratory relief in his Complaint. First, he asks the Court to issue a declaration that requiring further premium payments under the Policy would be unjust and he is not required to remit further premium payments under the Policy in order to keep it in effect. Second, he asks the Court to issue declarations that the policy's language is not easily readable and that Brighthouse did not deal with him in good faith. Based on those declarations Mr. Graff asks the Court to declare the Policy null and void, upon which Brighthouse must return all premium payments he previously made. And finally, Mr. Graff asks the Court to issue a declaration that by requiring him to pay the remaining premiums through the policy's maturity date, Brighthouse will be unjustly enriched, so "the Policy is deemed paid up and no further premium payments are due to be paid by Plaintiff to the Defendant." [Compl., Prayer for Relief ¶¶ A–D.]

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, so nor suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be

5

true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022); *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). Courts do not accept as true the legal conclusions the plaintiff draws from the facts pled. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

### III. Discussion

Brighthouse asks the Court to dismiss the Complaint for several reasons. First, Brighthouse contends that the claims in all three Counts are barred by the applicable statutes of limitations. Second, Brighthouse argues that all of Mr. Graff's claims are barred by the filed rate doctrine. Third, Brighthouse contends that the Counts One and Two fail to state a claim because there is no private right of action for a violation of Minn. Stat. § 72C.06, nor for breach of the covenant of good faith and fair dealing. Finally, Brighthouse argues that Counts Two and Three are subject to dismissal because the parties' relationship is governed by a valid contract and the terms of the Policy cannot be altered based on the asserted claims.

The Court concludes that Mr. Graff's Complaint must be dismissed for failure to state a claim. The statutory-readability claim in Count One must be dismissed because, on the face of the Complaint, it is barred by the statute of limitations and because there is no private right of action. Plaintiff's good faith and fair dealing claim in Count Two is

also untimely. Finally, the Court finds the Complaint fails to state a claim for unjust enrichment.[2]

### A. Statute of Limitations

A complaint may be dismissed on statute-of-limitations grounds only where the applicability of the time bar is apparent on the face of the pleading. *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015). "A complaint establishes the statute of limitations defense 'if all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" *Willman v. Farmington Area Pub. Sch. Dist. (ISD 192)*, No. CV 21-1724 (JRT/JFD), 2022 WL 4095952, at *2 (D. Minn. Sept. 7, 2022) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (cleaned up)). "To determine whether a complaint is self-defeating based on a statute of limitations, a court must identify the relevant limitations period, the date the action was commenced, and the date the plaintiff's claims accrued." *Id.* at *3 (quotations omitted).

Here, the parties agree that the six-year statute of limitations under Minn. Stat. § 541.05, subd. 1(1), (2), applies to all of Mr. Graff's claims. [Def. Mem. at 9; Pl. Mem. at 8.] There is also no dispute that Mr. Graff commenced this action in state court on March 9, 2023. Therefore, the Court must examine whether Mr. Graff's causes of action accrued before March 9, 2017.

---

[2] Because the Court reaches these conclusions, it declines to address Brighthouse's arguments concerning the filed rate doctrine.

*Untimely Claims*

Start with the claims in Counts One and Two. The statutory-readability claim in Count One is a cause of action for liability under Minn. Stat. § 72C.06, and such a claim accrues at the time of the alleged statutory violation. *See Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 957 (D. Minn. 2000). Count Two's breach of the covenant of good faith and fair dealing that is implied in every contract is plainly a contract-based claim, and under Minnesota law, such a cause of action "accrues at the time of the breach, even though actual damages occur later." *TCF Nat'l Bank v. Market Intelligence, Inc.*, 812 F.3d 701, 710 (8th Cir. 2016) (cleaned up).

Under these accrual rules, the claims in Counts One and Two of the Complaint are untimely. Both claims are based on the allegation that the Policy did not provide easily readable and understandable language. If there was a violation of Minn. Stat. § 72C.06, it occurred at the time the language in the Policy was provided to Mr. Graff. Likewise, if the covenant of good faith and fair dealing required the Policy to contain readable and understandable language, and the failure to provide it breached the covenant, that breach occurred when the Policy was provided to Mr. Graff. On the face of the Complaint, the Policy was executed and delivered to Mr. Graff in late November 2004, far more than six years before he filed suit in March 2023.

*Discovery Rule*

To escape the result of the accrual rules applicable to Counts One and Two, Mr. Graff seeks to toll the statute of limitations pursuant to the "discovery rule." He argues that his claims should not be dismissed as untimely because his claims did not

8

accrue until 2022 when he first became aware of Minnesota Statutes Chapter 72C and the Readability of Insurance Polices Act under and when Brighthouse provided him with the Ledger. [Pl. Mem. at 3–4, 8–9.] But this invocation of the discovery rule is unpersuasive for at least three reasons.

First, it is far from clear that the discovery rule applies to either the statutory-readability claim or the good faith and fair dealing claim. "The discovery rule tolls the statute of limitations until a plaintiff 'knew or reasonably should have known,' in the exercise of reasonable diligence, of the facts necessary to support his claim." *Ellering v. Sellstate Realty Sys. Network, Inc.*, 801 F. Supp. 2d 834, 841 (D. Minn. 2011) (quoting *Hempel v. Creek House Tr.*, 743 N.W.2d 305, 311 (Minn. Ct. App. 2007)) (*Ellering*'s emphasis removed). Minnesota courts generally do not apply the discovery rule to causes of action that do not involve allegations of fraud. *Ellering*, 801 F. Supp. 2d at 840 (citing *Hanson v. Johnson*, Civ. No. 02-3709, 2003 WL 21639194, at *3 (D. Minn. June 30, 2003)). Courts in this District have expressed doubt that the discovery rule would apply to toll a limitations period on a claim based on a Minnesota statute that does not sound in fraud, *Ellering*, 801 F. Supp. 2d at 841, and have held that the discovery rule does not apply to a breach-of-contract action, *Untiedt's Vegetable Farm, Inc. v. Southern Impact, LLC*, 493 F. Supp. 3d 764, 768 n.6 (D. Minn. 2020) ("Minnesota applies the occurrence rule, not the discovery rule, in determining when a claim for breach of contract accrues").

Second, the fact that Mr. Graff did not know about the provisions of Minn. Stat. § 72C.06 until 2022 cannot be a basis for tolling. *See Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999) ("[I]n the absence of fraudulent

9

concealment, the running of the statute is not tolled by ignorance of the cause of action."); *Larson v. Am. Wheel & Brake, Inc.*, 610 F.2d 506, 510 (8th Cir. 1979) (stating that "ignorance of legal rights does not toll a statute of limitations").

And third, even if the discovery rule did apply, the Complaint and the Policy attached to it make clear that Mr. Graff knew or should have known, in the exercise of reasonable diligence, of the facts necessary to support his claim in 2004 when the Policy was delivered to him. The Policy itself contains language describing how the premiums would be calculated and that they would increase over time. The fact that Brighthouse provided him with the Ledger in 2022 is inapposite.

In addition, Mr. Graff has presented no allegations to suggest that Brighthouse fraudulently concealed the facts underlying the claims in Counts One and Two. There are no facts alleged to suggest Brighthouse took "affirmative acts intended to, and [was] successful in, preventing discovery of the cause of action." *Market Intelligence*, 812 F.3d at 711 (citing *Cohen v. Appert*, 463 N.W.2d 787, 791 (Minn. Ct. App. 1990)).

Accordingly, the Court concludes that Count One and Count Two of the Complaint must be dismissed for failure to state a claim because they are barred by the statute of limitations.

### *Unjust Enrichment*

The Court declines to dismiss the unjust enrichment claim as barred by the statute of limitations. A cause of action for unjust enrichment accrues when damage occurs. *See Cordes v. Holt & Anderson, Ltd.*, No. A08-1734, 2009 WL 2016613, at *2 (Minn. Ct. app. July 14, 2009); *see also Fish Tale Credit LLC v. Anderson*, Court File No. 16-cv-

4068 (JRT/LIB), 2017 WL 2729564, at *10 (D. Minn. June 6, 2017), *R&R adopted* 2017 WL 2728404 (D. Minn. June 23, 2017). Brighthouse argues that the unjust enrichment claim accrued in 2004 because the Policy disclosed that the cost of insurance would increase over time and how the Cash Value of the Policy would grow. [Def. Mem. at 9–11.] But Brighthouse does not explain how that equates to when the alleged damage occurred for purposes of determining the accrual date of Mr. Graff's unjust enrichment claim. And Brighthouse relied principally on the Minnesota Court of Appeals' decision in *Cordes*, a case in which the damage at issue was the plaintiff's alleged "overpayment" of unreasonable or excessive legal fees to a former attorney.

It is unclear that Mr. Graff is claiming that every premium payment he made under the Policy amounts to unjust enrichment. In fact, it seems he is asserting that Brighthouse's potential retention of premium payments in excess of the recoverable $800,000 death benefit under the Policy would be unjust. There is some indication in the case law that an unjust enrichment claim based on overpayments accrues when the overpayments are made, and overpayments made within the six-year limitations period are not barred, while claims based on those made more than six years before commencement of the action are foreclosed. *Block v. Litchy*, 428 N.W.2d 850, 854 (Minn. Ct. App. 1988). In the end, Brighthouse has not persuaded the Court that the unjust enrichment ought to be dismissed on statute of limitations grounds. But the unjust enrichment claim is subject to dismissal for reasons discussed in Part III.C. below, so the somewhat novel issues raised by the statute of limitation here need not be definitively answered.

### B. Private Right of Action

Brighthouse also argues that the statutory-readability claim in Count One of the Complaint must be dismissed because there is no private right of action to enforce Minn. Stat. § 72C.06. The Court agrees, and, even if it had been timely filed, Mr. Graff's claim that the Policy violates the statute must be dismissed for this reason as well.

Under Minnesota law, a statute "does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 689 (Minn. 2014). There is nothing in Minn. Stat. § 72C.06 that explicitly provides for a private right of action. Mr. Graff concedes as much. [*See* Pl. Mem. at 14.]

Nevertheless, Mr. Graff suggests that the statute implies a private right of action because it does not expressly give the Minnesota Commissioner of Commerce administrative enforcement powers and is silent on enforcement mechanisms. [Pl. Mem. at 15–16.] This argument is not persuasive. The Minnesota Legislature gives the Commissioner the power to enforce insurance statutes, including Minn. Stat. § 72C.06. *See* Minn. Stat. § 45.027, subd. 1 (listing the broad general powers of the Commissioner). This includes the power to take action when the Commissioner determines that an insurer has used a policy that fails to use easily readable and understandable language as required by § 72C.06. *In re Cert. of Authority of Liberty Ins. Corp., NAIC No. 42404*, File No. 50600/SMK, 2020 WL 1952583, at *1 (Minn. Dep't Comm. Mar. 6, 2020); *cf. In re Cert. of Authority of Allied Prop. & Cas. Ins. Co. (NAIC No. 42579)*, No. 53924, 2018 WL 9787033, at *1 (Minn. Dep't Comm. Aug. 29, 2018) (consent decree regarding insurer's

use of "policy language that was not clear"). Moreover, Chapter 72C requires insurers to follow statutory guidelines on readability, formatting, font choice, and other details, and to submit their policies to the Commissioner for approval. Minn. Stat. § 72C.10, subd. 1. The Commissioner is required to disapprove of a policy that does not comply with the statute's readability standards. Minn. Stat. § 72C.10, subd. 2(c). The statutory scheme is, overall, contrary to Mr. Graff's suggestion that there is a clear implication of a private right of action to enforce the requirements of Minn. Stat. § 72C.06.[3]

Mr. Graff suggests that failure to find a private right of action for enforcement of the readability requirements in Minn. Stat. § 72C.06 raises serious separation of powers concerns. [Pl. Mem. at 16–18 (citing *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984), Article VI, Section 1 of the Minnesota Constitution, *The Federalist No. 78*, *Marbury v. Madison*, 5 U.S. 137 (1803), and *Boumediene v. Bush*, 553 U.S. 723 (2008)).] However, this argument is unconvincing because it is built upon a

---

[3] The Wisconsin Court of Appeals appears to be the only court to have addressed the issue of where the responsibility lies for enforcing the requirements of Minn. Stat. § 72C.06, and it similarly found that the Commissioner has that duty. *See Gross v. Lloyds of London Ins. Co.*, 347 N.W.2d 899, 903–04 (Wis. Ct. App. 1984), *rev'd on other grounds by* 358 N.W.2d 266 (1984). The *Gross* court addressed an argument that language in a policy failed to comply with the readability requirements of the statute and found the following:

> [T]he arbiter of the standards would appear to be the Minnesota Commissioner of Insurance, who, under the dictates of Minn. Stat. § 72C.10 (West 1984), either approves or disapproves of a proposed policy.... It is apparent from the statutes cited that the application of the statutory criteria is an administrative task entrusted to the Minnesota Commissioner of Insurance."

*Id.*

13

flawed foundation. It presupposes that Minnesota's insurance laws are silent on the enforcement mechanisms for the policy-language readability requirement, but as explained above, the Minnesota Legislature gave that enforcement power to the Commissioner. It did not give a right of action to private plaintiffs either explicitly or by implication. Count One of the Complaint must be dismissed for this reason.

### C. Unjust Enrichment

Brighthouse contends that Mr. Graff's unjust enrichment claim should be dismissed because (1) the parties are governed by a valid contract, and (2) taken as true the allegations fail to show that Brighthouse received or obtained something of value that in equity and good conscience it should not retain. [Def. Mem. at 18–19.]

To state a claim for unjust enrichment, a plaintiff must allege that the defendant knowingly received a benefit to which the defendant was not entitled, and that it would be unjust under the circumstances for the defendant to retain that benefit. *See Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp.3d 880, 893 (D. Minn. 2021). It is "an equitable remedy that plaintiffs may not pursue where the rights of the parties are governed by a valid contract." *Wilson v. Corning, Inc.*, 171 F. Supp. 3d 869, 880 (D. Minn. 2016) (quotation omitted); *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014) ("[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract.") (alteration in *Twiestmeyer*). "Unjust enrichment does not occur when a defendant is enriched by what he is entitled to under a contract or otherwise." *Id.* (cleaned up).

Here, the Complaint fails to state a claim for unjust enrichment for two reasons. First, as alleged by Mr. Graff in the Complaint, the Policy is a contract that governs the parties' relationship. There simply is "'no dispute that a written contract governs the at-issue conduct.'" *Gisairo*, 516 F. Supp. 3d at 893 (quoting *HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*, 370 F. Supp. 3d 1020, 1029–30 (D. Minn. 2019)). Second, accepting the facts alleged in this case as true, the benefit Mr. Graff claims will unjustly enrich Brighthouse is the money he will pay to Brighthouse in additional premium payments if his father remains living through the Policy's maturity date. But this would mean only that Brighthouse would allegedly be "enriched by what [it] is entitled to under [the Policy]," and therefore negates Mr. Graff's unjust enrichment claim. *Twiestmeyer*, 742 F.3d at 854 (quotations omitted). For these reasons, the Court concludes that this Complaint fails to state a claim for unjust enrichment.

### D. Plaintiff's Remaining Arguments

At oral argument, counsel for Plaintiff stressed that this is an action seeking declaratory relief and appeared to suggest that because that is so, the Court cannot dismiss Mr. Graff's claims on statute of limitations grounds or due to the absence of a private right of action for any of his claims. However, "claims for ... declaratory relief are barred to the same extent that the legal claims for substantive relief on which they are based are barred." *Parkhill v. Minn. Mut. Life Ins. Co.*, 995 F. Supp. 983, 999 (D. Minn. 1998). Plaintiff cannot use the fact that he seeks various forms of declaratory relief to essentially eliminate the need to comply with the applicable statutes of limitations. And the Minnesota Declaratory Judgment Act itself cannot create a private right of action

where one does not otherwise exist. *See Eggenberger v. W. Albany Twp.*, 90 F. Supp. 3d 860, 863 (D. Minn. 2015) ("'A party seeking a declaratory judgment must have an independent, underlying cause of action based on a common-law or statutory right.'") (quoting *Alliance for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 916 (Minn. Ct. App. 2003)).

At the hearing on Brighthouse's motion, counsel for the Plaintiff also provided the Court with hard copies of several authorities in support of Mr. Graff's position that his claims should not be dismissed.[4] For example, counsel provided copies of several sections of a leading treatise on Minnesota law addressing Minnesota Rule of Civil Procedure 57, declaratory judgments, Minn. Stat. § 555.01 et seq., and the requirement that a justiciable controversy exist. 2 Minn. Prac., Civil Rules Annotated §§ 57.1–57.12 (6th ed. 2023 update). In addition, counsel provided the Court copies of seven cases addressing the power of courts to issue declaratory judgments when a justiciable controversy exists. These included *Montgomery v. Minneapolis Fire Department Relief Association*, 15 N.W.2d 122 (Minn. 1944), and *Holiday Acres No. 3 v. Midwest Federal Savings and Loan Association of Minneapolis*, 271 N.W.2d 445 (Minn. 1978). But these cases and commentaries do not contradict the Court's conclusion that claims for declaratory relief are not exempt from the limitations periods applicable to their

---

[4] Plaintiff's counsel also provided the Court with copies of cases discussing accrual rules for application of the statute of limitations and the limited application of the discovery rule under Minnesota law. These included *In re Petters Co., Inc.*, 494 B.R. 413, 445–48 (D. Minn. Bankr. 2013), *Dalton v. Dow Chemical Co.*, 158 N.W.2d 580, 584 (Minn. 1968), and *Antone v. Mirviss*, 720 N.W.2d 331, 335–36 (Minn. 2006). These cases do not change the Court's conclusions that the claims in Counts One and Counts Two must be dismissed as time-barred.

corresponding underlying claims, nor do they suggest that a claim for declaratory relief can create a private right of action where none exists.

## IV.  Order

For the reasons explained above, **IT IS HEREBY ORDERED THAT**

1. Defendant's Motion to Dismiss [Doc. No. 10] is **GRANTED**; and

2. The Complaint is **DISMISSED WITH PREJUDICE**.

**Let Judgment be entered accordingly**.

Date: October 17, 2023                    *s/Katherine Menendez*
                                          Katherine Menendez
                                          United States District Judge